**Rickie RAPIER, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 381S60.**

Supreme Court of Indiana.

May 18, 1982.

---

David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Rickie Rapier, defendant-appellant, was found guilty in a jury trial of Robbery, a Class B Felony, Ind.Code § 35–42–5–1 (Burns Repl. 1979) in Vigo Circuit Court on June 5, 1980. He was sentenced to a term of imprisonment of twelve (12) years. Rapier appeals.

Three errors are asserted by defendant, concerning: 1) whether the trial court erred in admitting into evidence the out-of-court statement of a witness, Lewis Brown; 2) whether the trial court erred in admitting into evidence the confession of defendant Rapier; and 3) whether the defendant was denied effective assistance of counsel.

The evidence most favorable to the State reveals that on January 5, 1980, a robbery took place at the Taco Tico Restaurant in Terre Haute, Indiana. This occurred around 1:30 in the morning when employees Kent Guthrie and Lori Bell were closing the restaurant. The robber wore a long coat and had a bandanna over his face, concealing everything but his eyes. The defendant was later identified as the robber and Guthrie and Bell testified that he threatened them with a gun and took the proceeds of the business from the cash register.

## I.

One of the witnesses called by the State was Lewis Brown. He voluntarily gave a statement to Detective Sergeant Johnson of the Terre Haute Police Department. This statement was later reduced to writing and signed by Brown. In the statement Brown had told Johnson that he was a cousin of defendant Rapier. Brown was being questioned by Detective Johnson about other crimes that he, Brown, had been involved in and volunteered information to Detective Johnson that he knew about the Taco Tico Robbery and knew who committed it. On further questioning, Brown told Johnson that Rapier admitted committing the robbery of the Taco Tico and told Brown many of the details involved in the robbery. He voluntarily gave a statement to Johnson relating his knowledge of the Taco Tico crime as related to him by Rapier and agreed to testify about it. The Taco Tico robbery had no relationship to Brown other than his knowledge through Rapier. It was not inferred nor suspected that Brown actually had any involvement in the Taco Tico robbery.

At the time of defendant Rapier's trial, Brown had been convicted of the crimes for which he was originally arrested and had no charges pending against him. When the State called Brown as a witness, he stated that his attorney had advised him to take the Fifth Amendment and not testify regarding his statement given to Detective Johnson. Brown then refused to testify about the facts set out in the statement, stating that he was taking the Fifth Amendment on advice of counsel. When the prosecutor received this response he advised Brown that he was not charged with any crime and the trial judge stated to Brown that he would extend absolute immunity to him on any testimony he might give before the court. Brown persisted in standing on his Fifth Amendment rights but he did not deny making the statement. The following questions and answers are in the record.

"Q. Mr. Brown is it true that you volunteered certain information to Detective Drake Johnson, is that true?

A. Yeah, I was coerced into that statement.

Q. So you did sign a statement on this particular occasion, isn't that correct?

A. In order not to get any time on my case, yes, that's right."

*Record* at 340.

The prosecutor then read portions of the statement to the defendant and asked him if they were not part of the statement he gave to Detective Johnson. At each question the witness would merely state that he was "standing on the Fifth." In this manner, the prosecutor covered the entire statement. At a later point in the story, the prosecutor read sections of the statement where Detective Johnson had given Lewis E. Brown his *Miranda* rights and advised him that any statements he made could be used against him in a court of law ending the question with "No threats, abuse or promises have been made to me to induce me to make this statement. Recall that Mr. Brown?" Mr. Brown answered the prosecutor with "Yeah, its a lie. I stand on the Fifth." The State then called Detective Johnson to the stand and through him placed the statement of witness Lewis Brown into evidence.

Defendant made no attempt to cross-examine witness Brown and objected to the admission of the statement on the grounds that it was hearsay.

■ It is the contention of the defendant that the admission into evidence of the contents of Brown's statement through the mouth of the prosecuting attorney and later in the form of that statement put into evidence through Detective Johnson, was a violation of the confrontation clause of the Sixth Amendment of the United States Constitution. The confrontation clause gives the accused the right to be confronted with the witnesses testifying against him. An integral part of this confrontation is the right to cross-examine the witness and test his recollection and his credibility before the trier of fact. The Supreme Court of the

United States pointed out in *Mattox v. United States*, (1895) 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409:

"The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."

*Id.* at 242, 15 S.Ct. at 339, 39 L.Ed. at 411. Because witness Brown relied on his Fifth Amendment rights and refused to testify about the statement, defendant believes that that foreclosed any cross-examination available and therefore his Sixth Amendment confrontation rights were not accorded him.

The State contends that no error occurred when the trial court permitted the statement of Lewis Brown to be read in court and subsequently entered into evidence over defendant's hearsay objection since the witness was available for cross-examination and admitted making the statement. The State relies on our decision in *Patterson v. State*, (1976) 263 Ind. 55, 324 N.E.2d 482. We provided in *Patterson* that the prior statement of a witness is admissible not only for impeachment purposes but also as substantive evidence to prove the truth of the facts asserted provided the out-of-court declarant is present for cross-examination. With the presence of the witness available for cross-examination the danger of admission of hearsay testimony is eliminated. Where a witness admits making a prior statement but repudiates it, such stance by the witness does not affect its use as substantive evidence and it is admissible as such. *Stone v. State*, (1978) 268 Ind. 672, 377 N.E.2d 1372; *Torrence v. State*, (1975)

263 Ind. 202, 328 N.E.2d 214. Brown did not deny making the statement but instead repudiated it on the witness stand. He, at one point, said he was coerced into making the statement, and another time said that some statements made by him to Johnson, appearing in the statement, were lies. His only response to the prosecutor was that he did not want to answer because he wanted the protection of the Fifth Amendment. He persisted in this even though he was not in any way in need of Fifth Amendment protection as far as this case was concerned. He was not suspected or charged with the Taco Tico robbery and he was advised of such, both prior to the trial and during his testimony. He was advised by the court that he was given total immunity and was in no danger of incriminating himself with regard to his testimony in this case. The only reasons he gave for repudiating the statement were that he was coerced into giving it and that at least some part of it was a lie.

Defendant relies on *Douglas v. Alabama*, (1965) 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934. In *Douglas*, a witness was called by the State and refused to testify, invoking his Fifth Amendment privilege against self-incrimination. However, the witness in *Douglas* was an accomplice of Douglas and had signed a confession in which he implicated himself and Douglas in the crime in question. The State then, in the guise of refreshing the witness' recollection, purported to read from the statement of the witness and asked the witness if he had given that statement, in much the same manner as was done by the prosecuting attorney in the case before us. The statement of the witness was then identified by law enforcement officers who had taken the statement from the witness. The U. S. Supreme Court found in that case that the constitutional right of the accused to be confronted with the witness against him was denied since the witness there invoked the privilege against self-incrimination and was not available to be cross-examined and therefore confronted by the defendant. That case does not present the same ques-

tion we have here, however, because witness Brown in this case is not an accomplice, is not charged with being involved in this crime, and has admitted giving the statement but has refused to testify about it. This difference was faced by the U. S. Supreme Court in *California v. Green*, (1970) 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489. In *Green*, a juvenile had told the police officer and testified at the accused's preliminary hearing that the accused had furnished marijuana to the juvenile. At the trial of the accused, the juvenile said that he had taken LSD at the time of the alleged crime and was unable to remember how he had obtained the marijuana. The prior testimony of the juvenile in the preliminary hearing was admitted into evidence and the police officer's testimony concerning what the minor had told him about the accused's furnishing marijuana was admitted into evidence. The Court noted that the testimony of the juvenile in the preliminary hearing was under oath and subject to cross-examination at that time. It did hold, however, that the confrontation clause is not violated by admitting a declarant's out of court statements as long as the declarant is testifying as a witness and subject to full and effective cross-examination. Unlike *Douglas v. Alabama*, but similar to the situation in *Green*, witness Brown had admitted that he had made the statement but now refuted its truth as we have indicated above. The attitude and testimony of the witness indicated that he may have responded to cross-examination by the defendant if an attempt had been made. Defendant, however, declined to do so. There is, however, another reason to find that the admission of the witness' testimony was harmless error if it was, in fact, error at all. Defendant Rapier gave a full and complete confession to the police in which he recounted his involvement in the crime in question. His confession covered not only the facts testified to by witness Brown but gave more and detailed facts in which defendant admitted his commission of the crime. We faced this same issue in *Stone v. State*, (1978) 268 Ind. 672, 377 N.E.2d 1372. Appellant Stone had contended that admission of the edited confession of his co-defendant Williams at their joint trial violated the rule of *Bruton v. United States*, (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 and denied him his Sixth Amendment right to confront witnesses against him because the redaction of such confession by deleting his name was ineffective. Williams did not testify at the trial. Justice DeBruler, writing for a unanimous court in *Stone* noted that appellant Stone had confessed to his participation in the robbery and the admission into evidence of such confession had been proper and further found that appellant's confession had, in all significant and material ways, agreed with Williams' statement involving appellant in the crime. It was then found that any error in the admission of Williams' redacted statement was harmless error beyond a reasonable doubt. *Citing Carter v. State*, (1977) 266 Ind. 140, 361 N.E.2d 145.

For reasons we will state subsequently in this opinion, defendant Rapier's confession was properly admitted into evidence in this cause and we accordingly find that any error in the admission of witness Brown's testimony was harmless error.

## II.

Defendant next contends that the trial court erred in denying his motion to suppress his written confession. He claims that he was coerced into making the confession.

This Court recently stated in *Chandler v. State*, (1981) Ind., 419 N.E.2d 142 at 147:

"It is the state's burden to prove, beyond a reasonable doubt, that the defendant voluntarily and intelligently waived his rights, and that the defendant's confession was voluntarily given. *Shepler v. State*, (1980) Ind., 412 N.E.2d 62; *Jackson v. State*, (1980) Ind., 411 N.E.2d 609. Upon a review of the denial of a motion to suppress a confession and the subsequent admission of that confession over objection, this Court will not weigh the evidence or judge the credibility of witnesses. The admissibility of a confession ultimately depends upon questions of fact

which are to be resolved by the trial court. If the evidence is conflicting, only that evidence which tends to support the trial court's ruling will be considered on appeal. If the trial court's ruling is supported by substantial evidence of probative value, it will not be disturbed. *Fleener v. State*, (1980) Ind., 412 N.E.2d 778; *Wollam v. State*, (1978) 269 Ind. 286, 380 N.E.2d 82."

■ The evidence at the suppression hearing showed that on May 3, 1980, defendant was advised of his constitutional rights on the evening of his arrest. He indicated at that time that he understood those rights and signed a waiver of his rights expressed therein. Again on March 4, 1980, defendant was advised, by Detective Sergeant Pruitt, of his constitutional rights in regard to giving a voluntary statement and again indicated that he understood those rights and signed a waiver form in the presence of Detective Pruitt. Pruitt testified that the defendant was calm and did not appear to be under the influence of alcohol or drugs. Pruitt also testified that the defendant never indicated he wanted an attorney to be present or that he wanted to talk to one before he gave any statement. Defendant then orally confessed to the crime to Sergeant Pruitt. The secretary was called in and the statement was again given by the defendant in question and answer form and typed by the secretary. The secretary also testified that she did not recall hearing the defendant make any statement regarding an attorney during the giving of the statement. The defendant testified at the suppression hearing that he was tricked into signing the confession and the waiver by Officer Pruitt. He testified that he had told Pruitt he wanted an attorney present before he was questioned but that Pruitt would continually put him off and tell him there would be one later. Defendant also indicated that Pruitt had stated to him that things would be more difficult for Rapier if he would not give Pruitt a confession then, rather than waiting for an attorney to be present before making a confession. The defendant testified that he did give a statement but stated that he did

not want to make one and that he did not think it was right to sign it. Thus, we are presented with a situation where the evidence is in conflict on this one point. There was, nevertheless, sufficient evidence to support the trial court's finding that defendant's confession was voluntarily given after he knowingly waived his rights. *Chandler, supra; Shepler, supra; Jackson, supra.*

### III.

Defendant's contention that he was not afforded competent assistance of counsel is based primarily on his appraisal that much of the evidence from the State's witness was gained by the leading questions posed to the witnesses by the prosecutor. Defendant contends that this procedure is evident throughout the direct examination of all of the State's witnesses and that Rapier's trial counsel made no objection to this tactic. Defendant, however, does not set out any of these questions and therefore does not point out prejudicial evidence that was admitted against the defendant that could have been prevented by proper objection. Neither does it show that he objected to any of the questions at trial and received an unfavorable ruling from the court. In *Shipman v. State*, (1962) 243 Ind. 245, 183 N.E.2d 823, we responded to this same issue as follows:

"Whether a leading question is to be allowed is a decision largely within the discretion of the trial court. On appeal it must be shown that there was an abuse of discretion. *Webster v. State*, (1934) 206 Ind. 431, 190 N.E. 52; *Seymour Water Co., v. Lebline*, (1924) 195 Ind. 481, 144 N.E. 30. Also, to constitute reversible error, it must appear that appellant was substantially injured by the answer. *Hilton v. Mason*, (1883) 92 Ind. 157; *Weik v. Pugh*, (1884) 92 Ind. 382. It does not appear that the court abused its discretion in permitting the State to ask the question to which the appellant objects, nor does it appear that appellant was in anywise injured by the answer."

*Id.* at 256, 183 N.E.2d at 828.

■ Defendant also points out that trial counsel did not make the proper objections

to the admission of the testimony of witness Brown discussed in Issue I above. In view of our disposition of that issue, we cannot see that the failure of counsel to make further objections than he did to the testimony of witness Brown placed the defendant in such grave peril that we could find he had ineffective assistance of counsel. Defendant has failed to adduce the strong and convincing proof required to overcome the presumption of effective counsel. *Leaver v. State*, (1981) Ind., 414 N.E.2d 959.

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.